UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| MICHAEL PARTON, *et al.*, | ) |
| Plaintiffs, | ) |
| v. | ) No. 2:81-cv-19-DDN |
| CARL WHITE, *et al.*,[1] | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on the several motions of movant Jermaine Cortez Pate to intervene; to reopen and enforce the consent decree entered on December 8, 1983; for injunctive relief; and for the appointment of counsel. (Docs. 97, 98, 100, 101, 102, 106, 109). Defendants move to dismiss for lack of standing and oppose the motions for injunctive relief. (Doc. 111.) The original parties to the action consented to the exercise of plenary authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).

For the reasons set forth below, plaintiff's motions are denied, and defendant's motion is denied as moot.

## BACKGROUND

This case was originally filed on May 11, 1981, by three inmates at what was then called the Missouri Training Center for Men, now named the Moberly Correctional Center. The plaintiffs alleged unconstitutional conditions of confinement, largely related to

---

[1] The case caption currently reflects the defendants named when the case was first filed. Movant seeks to substitute the current holder of each office as a named defendant. (Doc. 97 at 6.) However, since they have not been served with process, the Court refers to them only as "defendants."

overcrowding. The action was then conditionally maintained as a class action, and an amended complaint was filed on April 15, 1983. On December 8, 1983, the parties entered into a consent decree, which was approved by the Court on December 30, 1983. Though the case was administratively closed with the approval of the consent decree, the Court actively monitored the conditions at the prison through January 1998, occasionally sustaining defendants' motions for modification of the decree while requiring them to file periodic compliance reports. Prior to the motions presently before the Court, the case had been inactive since May 2001.

On February 18, 2022, movant filed a motion to intervene and to enforce the consent decree, stating that the original plaintiffs are "no longer available." (Docs. 97 and 100[2].) Movant alleged unconstitutional conditions of confinement, including food service violations; an unsafe work environment; inadequate health care; and inadequate living conditions. (*Id*. at 3-4.) From March 15 to May 20, 2022, he filed additional motions to reopen the consent decree proceedings (Doc. 98); to enforce the consent decree and for sanctions for breach of the decree (Doc. 101); for an injunction to prevent his transfer to another institution (Doc. 102); for modification of the consent decree and injunctive relief (Doc. 106); and to appoint counsel (Doc. 109). Defendants filed their motion to dismiss on June 3, 2022. (Doc. 111.)

Movant has also filed in this Court a separate complaint regarding the same issues, which the Court construed as an attempt to litigate the consent decree in this case. *Pate v. White*, No. 2:22-CV-006 RLW, 2022 WL 2802308 at *3 (E.D. Mo. July 18, 2022). The Court dismissed that action without prejudice. *Id*.

## DISCUSSION

The Court first considers plaintiff's motions to intervene (Doc. 97) and reopen the consent decree (Doc. 98). In their motion to dismiss, defendants argue that movant, as a

---

[2] Doc. 100 was originally filed in *Pate v. White*, No. 2:22-CV-006 RLW, and is largely duplicative of Doc. 97.

non-party, lacks standing to enforce the consent decree. (Doc. 112 at 5.) They also argue that plaintiff's motion for an injunction preventing his transfer should be denied, as it fails under the *Dataphase* factors. (*Id*. at 7.)

## Standing

On timely motion, a court may permit intervention when the prospective intervenor "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "When a party opposes a motion to intervene on the basis of standing, the prospective intervenor must allege facts showing the familiar elements of Article III standing." *American Civil Liberties Union of Minn. v. Tarek ibn Ziyad Academy*, 643 F.3d 1088, 1092 (8th Cir. 2011). "[S]tanding is a jurisdictional prerequisite that must be resolved before reaching the merits of a suit." *City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007). To establish standing, a plaintiff must satisfy three elements: (1) an actual or imminent injury in fact that is (2) traceable to the challenged conduct of the defendant and that (3) will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

"[A] consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to be benefited by it." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 750 (1975) (citations omitted). The Eighth Circuit has held that a third party seeking to enforce a consent decree must, "at a minimum, show that the parties to the consent decree not only intended to confer a benefit upon that specific third party, but also intended to give that third party a legally binding and enforceable right to that benefit." *Pure Country, Inc. v. Sigma Chi Fraternity*, 312 F.3d 952, 958 (8th Cir. 2002). "When construing a consent decree, courts are guided by the principles of contract interpretation and, where possible, will discern the parties' intent from the unambiguous terms of the written consent decree, read as a whole." *Id*. "[A] consent decree is a final judgment that may be reopened only to the extent that equity requires." *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 391 (1992).

The consent decree in this case stated that "the plaintiff class consist[ed] of persons who are, or will be confined, in the custody of the Missouri Department of Corrections and Human Resources at the Missouri Training Center for Men at Moberly, Missouri." (Doc. 111-1 at 2.)  In the section regarding the voluntary reduction in inmate population, the decree provided that the plaintiffs could renew the litigation if defendants did not reach the stated goal. (*Id*. at 4.)  In the associated provisions section, the decree expressly permitted individual plaintiffs and class members to pursue actions alleging violations of constitutional rights, "unless the action pertain[ed] to the inmate population level" at the prison. (*Id*. at 6.)  This Court reserved jurisdiction over the action to ensure compliance. (*Id*.)  The decree became final and the Court relinquished jurisdiction if defendants met and maintained the population reduction goals within nine years; even after that time period, the Court retained jurisdiction as necessary to enforce the provisions of the decree. (*Id*. at 4.)

As an initial matter, the Court questions whether it retains jurisdiction over the decree.  The population reduction goal was substantially accomplished, with modifications to increase the population granted in 1993 and 1996. (Doc. 80 at 1.)  Though neither party has moved to terminate the consent decree, the case has been dormant for 21 years, and it has been almost 39 years since the decree was entered.  The significant passage of time and the unavailability of the original plaintiffs to reopen the litigation suggest to the Court that it no longer has jurisdiction over the decree.

Even if the Court retains jurisdiction over this action, the consent decree is unambiguous as to the claims that plaintiffs and class members may pursue.  Plaintiffs, but not class members, could renew the litigation if defendants did not achieve the population reduction goals.  However, both individual plaintiffs and class members could pursue separate actions alleging constitutional violations, except for challenges to the inmate population level.  Together, the provisions show that while the parties to the consent decree intended to confer a benefit upon present and future inmate class members, i.e. the improvement of conditions in the prison, the decree does not confer a legally enforceable right to those benefits.  Movant states that the original plaintiffs are not available; therefore,

-4-

the consent decree litigation cannot be renewed. Inmate class members, like movant, may pursue individual actions alleging constitutional violations, but they may not seek to enforce the consent decree. Without a right to enforce the consent decree, movant cannot show an injury in fact, as he does not have a legally protected interest in defendants' compliance with the consent decree. *See Lujan*, 504 U.S. at 560. Thus, he does not have standing to intervene and reopen this action.

In response to defendants' motion to dismiss for lack of standing, movant relies on *Hall v. Jackson Cnty. Dep't of Corr.*, No. 84-1200-CV-W-DW, 2007 WL 1063183 (W.D. Mo. Apr. 4, 2007). Movant contends that the *Hall* court found that future inmates had standing pursuant to the court's continuing jurisdiction over the consent decree. The Court disagrees.

*Hall* involved a consent decree, entered in 1986, that addressed the conditions of confinement at Jackson County Jail. *Id*. at *1. The court actively monitored the decree between 1992 and 1995. *Id*. When the court terminated the consent decree in 2007, it noted that "the decree and other findings of the Court retain collateral effect in any future litigation that may arise related to the conditions" at the subject facility. *Id*. at *2. It cited *Inmates of Suffolk County Jail v. Rouse*, which emphasized the difference between terminating and vacating a consent decree. 129 F.3d 649, 662 (1st Cir. 1997). While terminating a consent decree preserves the past legitimacy and collateral effects of the decree, vacating the decree would wipe the slate clean and "cast[] a shadow on past actions taken under the decree's imprimatur." *Id*.

*Hall* does not apply to the currently pending motions. The *Hall* court did not discuss whether future inmates would have standing to intervene and reopen the terminated consent decree. Rather, by terminating the consent decree rather than vacating it, the court acknowledged that the decree was legitimate and may have collateral effects relevant to future litigation.

The Court concludes that movant does not have standing to intervene and reopen the consent decree. Because his complaint in *Pate v. White*, No. 2:22-CV-006 RLW, was

dismissed without prejudice, movant may file a separate action to challenge allegedly unconstitutional conditions of confinement at the Moberly Correctional Center.

### Injunctive relief

Movant seeks a preliminary and permanent injunction to prevent his transfer to another prison, contending that defendants plan to transfer him in retaliation for his efforts to reopen the consent decree. (Doc. 102 at 2.) Movant additionally seeks injunctive relief for the remediation of allegedly inadequate living conditions. (Doc. 106 at 2-3.)

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008). In determining whether to issue a preliminary injunction, the Court must consider four factors: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). The second and fourth factors, harm to the opposing party and the public interest, merge when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

None of the four factors is determinative, and each must be examined "in the context of the relative injuries to the parties and the public." *Dataphase*, 640 F.2d at 113. However, "the absence of a likelihood of success on the merits strongly suggests that preliminary injunctive relief should be denied." *Barrett v. Claycomb*, 705 F.3d 315, 320 (8th Cir. 2013) (citation omitted). District courts have discretion to apply the *Dataphase* test in a pragmatic, "flexible" way. *Richland/Wilkin Joint Powers Auth. v. United States Army Corp of Eng'rs*, 826 F.3d 1030, 1036 (8th Cir. 2016) (citations omitted). A request for injunctive relief in the prison context must be viewed with caution because "judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995) (quoting *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982)).

*Retaliatory transfer*

In his "verified petition for preliminary and permanent injunction," movant states that he recently received a conduct violation report due to an unauthorized relationship with staff. (Doc. 102 at 1-2.) He alleges that the "conduct violation is due to [him] reopening the consent decree" and that defendants intend to use the conduct violation report to transfer him to another facility as pretext for retaliation. (*Id*. at 1.)

The Court construes the request for injunctive relief as a claim of retaliatory transfer. Though an inmate may be transferred from one prison to another for a constitutionally permissible reason or no reason at all, prison officials may not punish an inmate because he exercises his constitutional right of access to the courts. *Sisneros v. Nix*, 95 F.3d 749, 751-52 (8th Cir. 1996). "In raising a retaliatory transfer claim, the prisoner must face a substantial burden in attempting to prove the actual motivating factor for his transfer was the impermissible retaliation." *Goff v. Burton*, 7 F.3d 734, 737 (8th Cir. 1993).

Movant's request for injunctive relief provides few details beyond his conclusory assertions. He does not state when the transfer will occur, nor does he provide information about the conduct violation report. It is also unclear from the motion whether his conduct violation was a product of the present litigation or whether the violation report was prepared as retaliation. Movant has failed to carry his substantial burden to prove that the motivating factor for his possible transfer is retaliation. He is therefore unlikely to succeed on the merits of a retaliatory transfer claim.

Transfer in retaliation for challenging the conditions of his confinement would constitute irreparable harm to movant, as his transfer to another facility would render his claims moot. *See Smith v. Hundley*, 190 F.3d 852, 855 (8th Cir. 1999). However, the remaining factors, the balance of harms and the public interest, weigh in favor of defendants. Consideration of the public interest "is dependent on the determination of the likelihood of success on the merits . . . because it is always in the public interest to protect constitutional rights." *Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008), *overruled on other grounds by Phelps-Roper v. City of Manchester*, 697 F.3d 678 (8th Cir. 2012) (en banc). As discussed above, movant is unlikely to succeed on the merits, so there is no

public interest in enjoining his transfer. Moreover, injunctive relief would harm defendants, as it would interfere with the complex task of prison administration.

*Conditions of confinement*

Movant seeks an injunction requiring defendants to remediate "inadequate living conditions," including asbestos, poor air and water quality, food handling violations, vermin, lead-based paint hazards, and structural damage. (Doc. 106 at 2-3.) The Court construes movant's allegations as challenges to his conditions of confinement under the Eighth Amendment. While the Constitution "does not mandate comfortable prisons," the Eighth Amendment imposes duties on prison officials, who "must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citations and quotations omitted).

All of the *Dataphase* factors weigh in favor of denying the motion for injunctive relief. As discussed above, movant does not have standing to litigate the consent decree, so he cannot succeed on the merits in this action. Additionally, the Court is without sufficient information to determine whether the conditions alleged by movant constitute irreparable harm to him, as he listed the conditions in his motion without detail regarding where the conditions occur and how they affect him. While it is in the public interest to protect his constitutional rights, he cannot succeed on the merits, so there is no public interest in granting injunctive relief. Finally, as discussed above, injunctive relief would harm defendants in that it would interfere with prison administration.

Because movant has failed to carry his burden, the Court denies his motions for injunctive relief without prejudice to their refiling in a separate action.

## CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the motions of movant Jermaine Cortez Pate to intervene and to reopen the proceedings **(Docs. 97 and 98) are denied with prejudice.**

–9–

**IT IS FURTHER ORDERED** that the motions of movant for injunctive relief **(Docs. 102 and 106) are denied without prejudice.**

**IT IS FURTHER ORDERED** that the motions of movant to enforce the consent decree, to modify the consent decree, and for appointment of counsel **(Doc. 100, 101, 106, 109) are denied as moot.**

**IT IS FURTHER ORDERED** that the motion of defendants to dismiss **(Doc. 111) is denied as moot.**

An appropriate Judgment Order is issued herewith.

                                                **/s/ David D. Noce**
                                      **UNITED STATES MAGISTRATE JUDGE**

Signed on August 24, 2022.